```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - -:
JOSE MARTINEZ and HAYWANTIE SINGH,   :  01 Civ. 2289 (MBM) (JCF)
on Their Own Behalf and on Behalf    :
of All Other Similarly Situated      :        MEMORANDUM
Persons, and GEORGE MIRANDA, as a    :        AND ORDER
Trustee of the UNION MUTUAL FUND     :
PENSION PLAN, the ALLIED WELFARE     :
FUND and the VACATION FRINGE         :
BENEFIT FUND,                        :
                                     :
                    Plaintiffs,      :
                                     :
     - against -                     :
                                     :
GEORGE BARASCH; STEPHEN BARASCH;     :
LINDA BARASCH GLAZER; RICHARD        :
GLAZER; JOHN MORRO, Individually     :
and as President of ALLIED TRADES    :
COUNCIL; JACK SIEBEL, REGINALD       :
ROSADO and JAMES CROWLEY,            :
Individually and as Officers of      :
ATC; GERALD HERSKOWITZ, LOUIS        :
KAPLAN, STEPHEN CAMADECO, RUDOLPH    :
PASCUCCI, ANTHONY GUIGLIANO, and     :
BRUCE ROGERS, as Trustees of the     :
ALLIED WELFARE FUND; GERALD          :
HERSKOWITZ, HARVEY ROSEN, BRUCE      :
ROGERS, HERMAN WOLFSON, STEPHEN      :
CAMEDECO, and JAMES CROWLEY, as      :
Trustees of the VACATION FRINGE      :
BENEFIT FUND; IRVING HANS, IRVING    :
KROOP, DONALD MARINO, HAROLD         :
BANNER, BERTRAM GELFAND, as          :
Trustees of UNION MUTUAL FUND        :
PENSION PLAN; CHURCHILL              :
ADMINISTRATORS, INC.; FINANCIAL      :
ADMINISTRATORS, INC.,                :
                                     :
                    Defendants.      :
- - - - - - - - - - - - - - - - - - -:
JAMES C. FRANCIS IV
UNITED STATES MAGISTRATE JUDGE
```

Current and former participants in four employee benefit plans sued the plans' fiduciaries, among others, charging violations of the fiduciary provisions of the Employee Retirement Income Security Act ("ERISA"). The case was ultimately settled. The parties

1

reserved for my decision the question of whether ERISA permits benefit plans to indemnify defendant fiduciaries for attorneys' fees in cases where the parties settle before the question of the fiduciaries' liability is judicially determined. Several of the defendants now seek an award of attorneys' fees. For reasons discussed below, I find that ERISA allows indemnification in this case, and I award fees and costs to those defendants who have submitted applications to the Court.

Background

On March 19, 2001, participants in four union benefit funds operated jointly by the International Brotherhood of Teamsters (the "IBT") Local 815 and the Allied Trades Council (the "ATC") sued the officers of the ATC, the trustees of the benefit plans, and companies acting as third-party administrators. See Bona v. Barasch, No. 01 Civ 2289, 2003 WL 1395932, at *1, *15 (S.D.N.Y. March 20, 2003). According to the plaintiffs, the defendants manipulated the third-party administrators' services contracts in order to enrich themselves.

In addition to the ATC officers, the specific defendants in the underlying action included the trustees of the Union Mutual Fund Pension Plan (the "UMF"); the trustees of the Allied Welfare Fund (the "AWF"); the trustees of the Vacation Fringe Benefit Fund (the "VFBF"); the trustees of the Union Mutual Medical Fund (the "UMM"); Financial Administrators, Inc. ("Financial"), the third-party administrator of the UMF; Churchill Administrators, Inc. ("Churchill"), the third-party administrator of the AWF, the VFBF,

and the UMM; George Barasch, a founder of both IBT Local 815 and the ATC; his daughter and son-in-law, Linda Barasch Glazer and Richard Glazer, who were principal officers of Financial; Mr. George Barasch's son, Stephen Barasch, who was the principal officer of Churchill.

The plaintiffs are individuals who had been members of the ATC when the litigation began (the "ATC plaintiffs"), and George Miranda.  Mr. Miranda is a trustee of the UMF, the AWF, and the VFBF, the only trustee of those plans named as a plaintiff instead of as a defendant in the suit.

The plaintiffs charged all of defendants with violating the Racketeer Influenced and Corrupt Organizations Act ("RICO") and the fiduciary provisions of ERISA.  They further charged the ATC officers with violating section 501(a) of the Labor-Management Reporting and Disclosure Act (the "LMRDA") by, among other things, accepting gifts from Barasch-controlled entities in exchange for payments of union money to a Barasch foundation and business.  Mr. Miranda joined in the ERISA claims only.  (Second Amended Verified Complaint, ¶¶ 57-91, attached as Exhibit B to Declaration of Steven C. Russo dated Sept. 12, 2005 ("Russo Decl.")).

Chief Judge Michael B. Mukasey presided over litigation of the substantive claims. On March 20, 2003, Judge Mukasey held that the plaintiffs had standing to seek monetary damages under ERISA on behalf of the funds but, not on behalf of themselves, dismissed the RICO claims, and dismissed the claims against the Union Mutual Medical Fund. <u>Bono v. Barasch</u>, 2003 WL 1395932 at *9-12, *13-14,

\*23-24. In three subsequent decisions, Judge Mukasey denied the plaintiffs' motion for partial summary judgement, denied class certification to the ATC plaintiffs, and dismissed the LMRDA claim on standing grounds because the ATC plaintiffs did not maintain their memberships in ATC throughout the pendency of the action.[1] On October 5, 2005, after the parties reached settlement, Judge Mukasey dismissed the remaining claims.[2]

There are three distinct settlement agreements in this case. On December 14, 2004, Mr. Miranda entered into an agreement with the trustees of the UMF ("UMF Agreement," attached as Exh. E to Declaration of George Miranda dated Oct. 21, 2005 ("Miranda Decl.")), and on December 23, 2004 he entered and into a separate agreement with Financial and the principals of Financial. ("Financial Agreement," attached as Exh. F to Miranda Decl.). On April 19, 2005, Mr. Miranda, together with the ATC plaintiffs, entered into the third agreement with trustees of the AWF and the VFBF (together, the "Benefit Funds") and Churchill and Stephen Barasch (the "Benefit Funds Agreement"). (Settlement Agreement attached as Exh. G to Miranda Decl.).

All three agreements expressly state that the defendants deny any liability, breach of fiduciary duty, or wrongful conduct. (UMF Agreement at 2; Financial Agreement at 2; Benefit Funds Agreement

---

[1] Bona v. Barasch, No. 01-Civ. 2289, 2003 WL 21222531, at \*10 (S.D.N.Y. May 27, 2003); Martinez v. Barasch, No. 01 Civ 2289, 2004 WL 1367445, at \*4-7 (S.D.N.Y. June 16, 2004); Martinez v. Barasch, No. 01-Civ. 2289, 2004 WL 1555191, at \*7-8 (S.D.N.Y. July 12, 2004)

[2] Martinez v. Barasch, 2005 WL 2465493, at \*7.

4

at 2-3). The agreements require all of the defendants to immediately terminate their relationships with the funds, and require the Barasches and their companies to forego administrative contracts with the funds forever. (UMF Agreement, ¶¶ 4, 5; Financial Agreement, ¶¶ 2, 4-5; Benefit Funds Agreement, ¶¶ 2, 4).

Two of the agreements reserve for the Court the determination of attorneys' fees and legal costs. In provisions that are nearly identical in the UMF Agreement and the Benefit Funds Agreement the parties state that the Court "will make a determination on the propriety, under ERISA, of [the plans] reimbursing the [defendants] for the legal fees and disbursements that they incurred in defending against this Action." (UMF Agreement, ¶ 6; Benefit Funds Agreement, ¶ 10 (a)).[3] The parties also agree that no one will be deemed a "prevailing party" as that term is used in ERISA or other statutes governing the award of attorneys' fees. (UMF Agreement, ¶ 1; Benefit Funds Agreement, ¶ 9). The Benefit Funds Agreement provides that the Churchill defendants "shall not seek more than $125,000 in legal fees." (Benefit Funds Agreement, ¶ 10(a)).

Pursuant to the agreements, the AWF and VFBF trustees, who are represented by Proskauer Rose LLP, have submitted an application for indemnification by the AWF and the VFBF for legal fees and costs of $125,426.99. The Churchill defendants, who are represented by Sive, Paget, Riesel, P.C., seek indemnification by the AWF and the VFBF for $125,000. And the UMF trustees, who are

---

[3] The parties to the Benefit Funds Agreement also waive their right to appeal my decision. (Benefit Funds Agreement, ¶ 10(b)).

5

represented by Epstein Becker Green, P.C., have submitted a memorandum of law arguing in favor of an award but have not included a request for a specific amount.

The defendants seek attorneys' fees on the basis of contractual indemnification rights created by the plans. The AWF and VFBF trustees point to clauses in the funds' trust agreements. Those clauses require the funds (1) to pay "all expenses deemed by the Trustees necessary or appropriate for the administration of the FUND[,]" including legal fees, and (2) to relieve the trustees of liability for "any loss, damage, or depreciation in connection with the performance of their duties hereunder or the exercise of their judgment or discretion hereunder, except the same be due to the willful conduct of such Trustee[.]" (Allied Welfare Fund Amended Trust Indenture dated Sept. 19, 1988 (the "AWF Trust Indenture"), attached as Exh. N to Affidavit of Katharine H. Parker dated Sept. 13, 2005 ("Parker Aff."), Art. III, § 6, and Art. V, § 3; Trust Indenture dated Feb. 17, 1971, (the "VFBF Trust Indenture"), attached as Exh. O to Parker Aff., Art. III, § 6, and Art V, § 3).

The Churchill defendants cite identical clauses in the AWF, VFBF, and UMM service contracts. The clauses provide that the funds will indemnify Churchill for "any and all claims, lawsuits, settlements, judgments, costs, penalties and expenses, including attorneys' fees" arising under the contract unless it is determined that liability is a consequence of criminal conduct, negligence or fraud. (Administrative Services Agreement dated May 4, 1998 (the "AWF Services Contract"), attached as Exh. F to Declaration of

6

Steven C. Russo dated Sept. 12, 2005 ("Russo Decl."), ¶ 10; Administrative Services Agreement dated June 1, 1998 ("UMM Services Contract"), attached as Exh. F to Russo Decl., ¶ 19; Amended and Restated Administrative Services Agreement dated March 6, 2002 (the "VFBF Services Contract"), attached as Exh. G to Russo Decl., ¶ 9). It should be noted that the VFBF service contract did not contain an indemnity clause until 2002, a year after this litigation began. (Russo Decl., ¶ 14).

The UMF trustees point to a clause in the pension plan's founding document that obligates the plan to pay the costs of any suit against the trustees, provided payment is permissible under ERISA. (Union Mutual Fund Agreement and Declaration of Trust dated Dec. 21, 1976 (the "UMF Trust Agreement"), attached as Exh. E to Affidavit of Bertram R. Gelfand dated March 16, 2002, attached as Exh. 6 to Declaration of J. William Cook dated March 16, 2005 ("Cook Decl."), Art. III, § 7(m)).

Mr. Miranda opposes the defendants' applications on the ground that the defendants are not entitled to an award of attorneys' fees because (1) the parties expressly agreed that there are no prevailing parties and (2) the defendants engaged in misconduct. Section 502 governs the allocation of attorneys' fees in ERISA actions brought by private parties. 29 U.S.C. § 1132(g)(1). Mr. Miranda argues that in the absence of unusual circumstances, to win fees under § 502, applicants must be prevailing parties. (Plaintiff George Miranda's Memorandum of Law in Opposition to Defendants' Applications for Attorneys' Fees ("Miranda Memo.") at 22-23). Mr.

7

Miranda further contends that should the Court decide to waive the prevailing party requirement, the defendants are barred from obtaining fees under factors enunciated by the Second Circuit in Chambless v. Masters, Mates & Pilots Pension Plan, 815 F.2d 869, 871 (2d Cir. 1987), for evaluating § 502 claims.  (Miranda Memo. at 22-23).

Discussion

    A.   The Legal Framework

As a preliminary matter, it must be noted that the defendants do not seek an award under ERISA's attorneys' fee allocation section.  Rather, they seek enforcement of their contractual rights to indemnification.  Section 410(a), which governs the enforceability of exculpatory provisions in ERISA plan agreements, is the controlling law, not § 502.  Compare 29 U.S.C. § 1110(a) with § 1132(g)(1).  Mr. Miranda errs in opposing the defendants' applications on the basis of the fee allocation provisions of ERISA.

Section 410(a) voids "as against public policy" any provision that "purports to relieve a fiduciary from responsibility or liability for any responsibility, obligation or duty" owed to an ERISA plan.  29 U.S.C. § 1110 (a).  Courts have construed this section to flatly bar a fiduciary who has been found in breach of its duties from "recouping its expenses from the very plan it injured."  State Street Bank and Trust Co. v. Salovaara, 326 F.3d 130, 138 (2d Cir. 2003).  Courts do enforce indemnification agreements, though, where a defendant fiduciary has been vindicated

8

by litigation.  See Packer Engineering, Inc. v Kratville, 965 F.2d 174, 175 (7th Cir. 1992) ("[m]aking a faithful fiduciary whole hardly 'relieves' the fiduciary of responsibility or liability"); Leigh v. Engle, 858 F.2d 361, 369 (7th Cir. 1988)(finding no basis in § 410 for denying fees to a prevailing trustee).  The question left open by these cases is whether the law precludes contractual indemnification when parties settle before a court has decided whether the fiduciary breached its ERISA duties.  Establishing a rule that permits settling defendants to enforce their contractual indemnification rights poses a risk that in some cases fiduciaries will "recoup expenses from the very plan" they injured.

Shortly after ERISA was enacted, the Department of Labor issued an opinion letter advising ERISA fund trustees that in the event of a settlement the settling defendants would not be entitled to indemnification by the plan unless independent legal counsel reviewed the relevant facts and provided the plan with a written opinion that the acts of the defendants did not constitute a fiduciary breach.  Dep't of Labor Advisory Opinion No. 77-66, 77-67A, 1977 WL 5446, at *12 (Sept. 9, 1977).  Though such a procedure would reduce the risk that wrongdoers would recover expenses from plans they had injured, there is no legal authority for imposing it here.

Moreover, such a solution would disturb the burden of proof, which must remain with the plaintiff throughout a civil action. Cf. Moore v. Williams, 902 F. Supp. 957, 966-67 (N.D. Iowa 1995)(enforcing ERISA plan agreement providing for payment of

9

interim legal fees unless and until liability determined). A rule prohibiting the defendant from indemnification whenever a settlement is reached would unjustly relieve the plaintiff of its full burden. The opposite rule, which respects the importance of the burden of proof, does not necessarily force benefit funds to pay the defense costs of fiduciaries whose misconduct has harmed the funds: the trustees of the funds retain the option to pursue their litigation until liability has been judicially determined. When Mr. Miranda, a trustee of the ERISA plans in this litigation, opted to enter settlement negotiations, he should have been fully aware of the plans' indemnification obligations to the defendants. He could have insisted on a reallocation of attorneys' fees as part of the settlement, pressed for a process like the one contemplated in the 1977 Opinion Letter of the Department of Labor, or proceeded to trial.

In sum, settling defendants may generally enforce contractual indemnity rights without running afoul of ERISA. That does not end the inquiry, however. It must also be demonstrated that the specific contract provisions do not violate ERISA § 410(a)'s prohibition against exculpatory indemnity clauses. See Moore, 902 F. Supp. at 964.

B.  The Indemnification Clauses in This Case

None of the indemnity clauses relied upon by the defendants here violate ERISA. The indemnification clause of the UMF Trust Agreement expressly provides that it is enforceable only "to the extent permitted by ERISA." (UMF Trust Agreement, Art. III, §

7(m)). By its terms it does not provide any greater degree of indemnification than ERISA permits. The provisions in the AFW and the VFBF Trust Indentures are also enforceable: they expressly bar indemnification of trustees for willful misconduct. (AWF Trust Indenture, Art. V, § 3; VFBF Trust Indenture, Art. V, § 3)(emphasis added). See 29 C.F.R. § 2509.75-4 (interpreting § 410(a) of ERISA to permit indemnification provisions that leave fiduciaries fully responsible for misconduct described in 29 U.S.C. §§ 1101-1114).

Churchill asserts that the indemnification provisions in its service contracts with the AWF, the VFBF, and the UMM are not governed by ERISA at all because Churchill did not function under the contracts or otherwise as a fiduciary of the funds. This assertion is uncontested. As ERISA's regulation of indemnity provisions is limited to provisions covering fiduciaries, the provisions in the AWF, VFBF, and UMM Services Contracts are enforceable.

The plaintiff objects to enforcement of Churchill's contractual rights created by the VFBF service contract because the parties added the indemnity clause in March 2002, a year after the litigation began. That does not limit Churchill's right to indemnification, though. Under New Jersey law,[4] there is no per se limitation on the right of parties to apply an indemnity clause retroactively. Bowen Engineering v. Estate of Reeve, 799 F. Supp. 467, 486 (D.N.J. 1992). As long as the parties understand the

---

[4] The VFBF Services Contract is governed by New Jersey law. (VFBF Services Contract, ¶ 14).

11

clause to apply retroactively, its effect is not limited to the period following the date the parties sign the contract. See id. at 486-87 (applying contractual indemnity provision retroactively on the basis of an implicit intent of parties). The circumstances under which the VFBF and Churchill added an indemnity provision to their contract -- specifically, the existence of the ongoing lawsuit -- and the broad language of the provision, which promises indemnification for "any and all claims," support a finding that the parties intended the provision to apply retroactively.

C.  The Specific Applications for Indemnification

   1.  The AWF and VFBF Trustee Defendants

The AWF defendants assert that they incurred $66,339.58 in un-reimbursed legal fees and costs and ask the Court to order AWF to pay Proskauer Rose LLP ("Proskauer"), their attorneys, that amount plus reasonable interest. The VFBF defendants claim $59,087.41 in fees and costs and request an order directing VFBF to pay that amount to Proskauer, plus reasonable interest. The amounts are not contested. For reasons discussed below, the defendants are awarded the requested attorneys' fees and costs, but their application for interest is denied.

It should be noted that the funds may eventually recoup the fees they pay pursuant to today's order. The AWF and the VFBF had fiduciary liability insurance at the start of litigation. However, the insurer, Legion Insurance Company ("Legion"), went into liquidation in July 2003 and stopped paying claims. (Letter of Katharine H. Parker dated Sept. 13, 2005 ("Parker Letter"), at 3.

Pursuant to a process established by the Pennsylvania Insurance Commissioner, Proskauer has submitted a claim for all unpaid defense costs to Legion's liquidator. The law firm proposes assigning the claim to the Benefit Funds so that any money paid by the liquidator will be paid directly to the funds. (Parker Letter at 3). The plaintiff argues that the defendants, not the benefit plans, should bear the risk that the liquidator will not pay the claims in full. (Miranda Memo. at 7-8). This argument is not persuasive. The Benefit Funds are obligated by the terms of their charters to indemnify the trustees whether the funds maintain insurance or not. Legion's entry into liquidation does not change the nature of the funds' contractual obligation to its indemnitees.

The Allied Welfare Fund shall reimburse the AWF defendants $66,339.58; the Vacation Fringe Benefit Fund shall reimburse the VFBF defendants $59,087.41; and Proskauer shall assign its claims with Legion's liquidator for unpaid defense costs in the underlying action to the Benefit Funds. With respect to the Benefit Funds trustees' request for reasonable interest on attorneys' fees, the contractual indemnity clauses do not provide for such an award. Under New Jersey law, in the absence of a controlling contractual provision, an award of interest on attorneys' fees is not permitted. North Bergen Rex Transport, Inc. v. Trailer Leasing Co., 158 N.J. 561, 575-76, 730 A.2d 843, 851-52 (1999).

The Benefit Funds defendants also ask the Court to award litigation costs associated with enforcing their indemnity rights. The principle that legal expenses are not recoverable absent

13

express authorization is "[d]eeply imbedded in New Jersey jurisprudence." <u>State, Department of Environmental Protection v. Standard Tank Cleaning Co.</u>, 284 N.J. Super. 381, 410, 665 A.2d 753, 768 (App. Div. 1995). There is no provision in the Funds' indentures expressly authorizing them to bear the costs of applications for attorneys' fees. The request is, therefore, denied.

    2.   <u>The Churchill Defendants</u>

Stephen Barasch and Churchill Administrators, Inc. maintain that they have incurred $158,808.70 in legal fees and costs. This amount is not contested. Churchill has agree to a $125,000 ceiling on its request. The Allied Welfare Fund, the Vacation Fringe Benefit Fund and the Union Mutual Medical Fund shall reimburse Churchill for its legal fees and costs in the amount of $125,000.

    3.   <u>The UMF Defendants</u>

The UMF defendants have only submitted a memorandum of law in support of an application for litigation costs. If no agreement is reached with respect to the amount to be awarded for fees and costs incurred in defending the underlying action, they may submit an application to the Court within 30 days.

<u>Conclusion</u>

The application of Allied Welfare Fund trustees and the Vacation Fringe Benefit Fund trustees is granted in part and denied in part: the Allied Welfare Fund must reimburse the AWF defendants $66,339.58, and the Vacation Fringe Benefit Fund must reimburse the VFBF defendants $59,087.41. However, the funds are not required to

14

pay interest on those amounts or the costs of litigating the applications for attorneys' fees.

The application of Churchill Administrators, Inc. is granted. The Allied Welfare Fund, the Vacation Fringe Benefit Fund and the Union Mutual Medical Fund must reimburse Churchill $125,000.

Finally, the application of the UMF trustees is granted to the extent the trustees have sought a determination that they are entitled under ERISA to enforce their indemnification rights.

SO ORDERED.

*[signature: James C. Francis IV]*
JAMES C. FRANCIS IV
UNITED STATES MAGISTRATE JUDGE

Dated:  New York, New York
        February 21, 2006


Copies mailed this date to:

Thomas M. Kennedy, Esq.
Susan M. Jennik, Esq.
Kennedy, Schwartz & Cure, PC
113 University Place, 7th Fl.
New York, New York  10003

J. Bruce Maffeo, Esq.
Law Offices of J. Bruce Maffeo
233 Broadway, Suite 2701
New York, New York  10279

Roland Acevedo, Esq.
Seiff Kretz & Abercrombie
645 Madison Avenue
New York, New York  10022

Myron D. Rumeld, Esq.
Katharine H. Parker, Esq.
Proskauer Rose LLP
1585 Broadway
New York, New York  10036

John Fialcowitz, Esq.
Robert J. Kipnees, Esq.
Lowenstein Sandler PC
65 Livingston Avenue
Roseland, New Jersey  07068

Peter L. Altieri, Esq.
John Harris, Esq.
J. William Cook, Esq.
Epstein Becker & Green PC
250 Park Avenue
New York, New York  10177

Daniel Riesel, Esq.
Sive, Paget & Riesel
460 Park Avenue
New York, New York  10022